UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH LYNN ELLIOTT, | Case No. CV 11-0845-JPR |
| Plaintiff, | MEMORANDUM OPINION AND ORDER REVERSING COMMISSIONER AND REMANDING FOR FURTHER PROCEEDINGS |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | |
| Defendant. | |

**I. PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying her application for Social Security Disability Insurance Benefits. The parties filed a Joint Stipulation on November 29, 2011. The Court has taken the Joint Stipulation under submission without oral argument. For the reasons stated below, the Commissioner's decision should be reversed and this matter should be remanded for further proceedings.

**II. BACKGROUND**

Plaintiff was born on March 15, 1965. (Administrative Record

("AR") 53.) She graduated high school and was employed as an accounts payable clerk when she was injured on January 10, 2005. (AR 247, 326.) She has not worked since April 11, 2005. (AR 327.)

On March 29, 2007, Plaintiff protectively filed an application for a period of disability and disability insurance benefits, alleging that she had been unable to work since April 5, 2005, because of pain in her wrists, elbows, and hands. (AR 107, 212, 226.) After Plaintiff's application was denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge ("ALJ"). (AR 105-17.) An initial hearing was held on April 29, 2009, at which Plaintiff appeared with counsel and testified on her own behalf. (AR 58-66.) A supplemental hearing was held on March 5, 2010, at which testimony was taken from a Medical Expert, a Vocational Expert, and Plaintiff's mother. (AR 67-104.) In a decision issued on March 30, 2010, the ALJ determined that Plaintiff was not disabled. (AR 44-55.) On August 24, 2010, the Appeals Council denied Plaintiff's request for review. (AR 37-40.) This action followed.

**III. STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. § 405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a

preponderance. <u>Lingenfelter</u>, 504 F.3d at 1035 (citing <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. <u>Id.</u> at 720-21.

**IV.   THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.   <u>The five-step evaluation process</u>

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. § 404.1520(a)(4)(I). If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of

nondisability is made and the claim is denied. § 404.1520(a)(4)(ii). If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1; if so, disability is established and benefits are awarded. § 404.1520(a)(4)(iii). If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform her past work; if so, the claimant is not disabled and the claim must be denied. § 404.1520(a)(4)(iv). The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id. If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work in the economy. § 404.1520(a)(4)(iv). That determination comprises the fifth and final step in the sequential analysis. § 404.1520(a)(4)(v); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.   The ALJ's application of the five-step process

At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since April 5, 2005, the onset date of

---

[1] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. 20 C.F.R. § 404.1545; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

her alleged disability. (AR 46.) At step two, the ALJ concluded that Plaintiff had the severe impairments of "status post multiple surgeries in both upper extremities, including bilateral carpal tunnel release, right and left flexor pronator origin release, and status post right lateral epicondyle repair, and possible right cubital tunnel syndrome and bilateral carpal tunnel syndrome; major depression, moderate, recurrent; generalized anxiety disorder; and psychological factors affecting medical condition." (Id.) At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing. (AR 47.) At step four, the ALJ found that Plaintiff retained the RFC to perform a range of "light work"[2] but was "precluded from more than occasionally pushing and/or pulling, due to limitations moving her right elbow." (Id.) Moreover, the ALJ found that Plaintiff was "moderately to markedly limited in her ability to withstand the stress and pressures associated with an eight-hour workday and day-to-day work activity," "moderately limited in her ability to understand, remember and carry out an extensive variety of technical and/or complex job instructions, and maintain concentration and attention for at least two-hour increments," "slightly limited in her ability to relate and interact with supervisors and co-workers, and deal with the public," and "no[t]

---

[2] "Light work" is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). The regulations further specify that "[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id. A person capable of light work is also capable of "sedentary work," which involves lifting "no more than 10 pounds at a time and occasionally lifting or carrying [small articles]" and may involve occasional walking or standing. § 404.1567(a)-(b).

or only minimal[ly] limit[ed] in her ability to understand, remember and carry out simple one-or-two step job instructions, and handle funds." (Id.) The ALJ concluded that Plaintiff was unable to perform her past relevant work as an accounts payable clerk. (AR 53.) At step five, the ALJ found, based on the Vocational Expert's testimony and application of the Medical-Vocational Guidelines, that jobs existed in significant numbers in the national economy that Plaintiff could perform. (AR 54.) The ALJ agreed with the Vocational Expert that Plaintiff could perform the work of "marker" in the retail trade and "grader/sorter." (Id.) Accordingly, the ALJ determined that Plaintiff was not disabled. (AR 55.)

**V. DISCUSSION**

Plaintiff contends the ALJ (1) improperly rejected the opinions of her treating and examining physicians, Drs. Kevin Hilton, Frank Minor, Kenneth Fryer, and Mark Montgomery (J. Stip. 4-12); (2) omitted limitations from Plaintiff's RFC and the hypothetical question posed to the Vocational Expert (J. Stip. 17-24); (3) failed to develop the record (J. Stip. 29-31); and (4) improperly rejected Plaintiff's and her mother's testimony (J. Stip. 33-38).

A. <u>Rejection of treating and examining physicians' opinions</u>

1. Applicable law

Generally, the opinions of treating physicians are afforded more weight than the opinions of nontreating physicians because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996). Moreover, the opinions of examining physicians generally are entitled to greater weight than those of nonexamining physicians. <u>Lester</u>, 81 F.3d at 830.

The weight given a treating physician's opinion depends on whether it was supported by sufficient medical data and was consistent with other evidence in the record. See 20 C.F.R. § 404.1527(d)(2). If a treating physician's opinion was well supported by medically acceptable clinical and laboratory diagnostic techniques and was not inconsistent with the record's other substantial evidence, it should be given controlling weight and should be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830; § 404.1527(d)(2). When a treating physician's opinion conflicts with other medical evidence, the ALJ must provide "specific and legitimate reasons" for discounting the treating opinion. Lester, 81 F.3d at 830; Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). Likewise, with respect to an examining physician's opinion, the ALJ must provide "clear and convincing" reasons for rejecting an uncontradicted opinion or "specific and legitimate reasons" for rejecting a contradicted opinion. Lester, 81 F.3d at 830.

   2.   Applicable facts

In 2003, Plaintiff began experiencing pain in her elbows, forearms, and hands, which was associated with repetitive keying and lifting of files at work. (AR 335, 477.) In January 2005, Plaintiff felt severe pain in her right arm while trying to lift some heavy files. (AR 326.)

A number of workers' compensation physicians, all orthopedic surgeons, examined or treated Plaintiff. Dr. Hilton diagnosed Plaintiff with ulnar neuritis in both elbows, treated her with cortisone injections, referred her to therapy, prescribed surgery, and recommended no repetitive hand motions or fingering. (AR 343, 345.) Dr. Minor examined Plaintiff and agreed with Dr. Hilton's diagnosis,

further diagnosed bilateral lateral epicondylitis and carpal tunnel syndrome, and recommended no grasping or repetitive motions with the hands.  (AR 335, 375.)  Plaintiff initially declined Dr. Hilton's recommendation of surgery.  (AR 478.)

Because her initial treatment of cortisone shots and physical therapy did not relieve her pain, Plaintiff eventually underwent a series of surgeries on both arms.  (AR 326, 490.)  In April 2007, Dr. Fryer performed a right lateral epicondyle repair and a right carpal tunnel release.  (AR 446-47, 490.)  In November 2007, Dr. Fryer rated Plaintiff "temporarily total[ly] disabled."[3]  (AR 432.)  In December 2007, Dr. Fryer performed a left carpal tunnel release and a left flexor pronator origin release at the medial epicondyle.  (AR 448-49, 490.)  In April 2008, Dr. Fryer performed a right flexor pronator origin release at the medial epicondyle.  (AR 494-95, 490.)

During and after this period, Dr. Montgomery examined Plaintiff several times.  (AR 477-91.)  In October 2008, Dr. Montgomery conducted an Agreed Medical Evaluation[4] and found, among other things, that Plaintiff "is improved after her surgeries" but "remains quite symptomatic at the right elbow" and that she would benefit from additional surgery.  (AR 491.)  As to Plaintiff's level of functioning, Dr. Montgomery opined that Plaintiff should be restricted

---

[3] In workers' compensation parlance, the term "temporarily totally disabled" means that an individual is "totally incapacitated" and "unable to earn any income during the period when he is recovering from the effects of the injury." Booth v. Barnhart, 181 F. Supp. 2d 1099, 1103 n.2 (C.D. Cal. 2002).

[4] In a workers' compensation case, an Agreed Medical Evaluator is "a physician selected by agreement between the claims administrator, or if none, the employer, and a represented employee to resolve disputed medical issues." 8 Cal. Code Regs. § 1(f).

8

to "no heavy lifting[5] and no repetitive or forceful gripping, twisting, pushing, pulling or manipulating with the hands." (Id.)

Finally, in August 2009, Dr. Juliane Tran conducted an orthopedic evaluation of Plaintiff as part of her Social Security claim. (AR 503-07.) Dr. Tran noted Plaintiff's medical history, including her surgeries, but observed that Plaintiff "has good strength with manual muscle strength testing." (AR 506.) Based on her evaluation, Dr. Tran provided a functional assessment that restricted Plaintiff, in pertinent part, from performing activities involving frequent right elbow movements but assigned no restrictions in wrist movement, fingering, or grasping. (Id.)

       3.    Analysis

The ALJ credited the opinion and functional assessment of Dr. Tran. (AR 53.) In so doing, the ALJ effectively rejected the opinions of Plaintiff's treating and examining physicians, particularly the latest and more restrictive functional assessment provided by Dr. Montgomery after Plaintiff's surgeries. The ALJ's determination was unaccompanied by any explanation that specifically referenced these physicians' opinions; instead, the ALJ generally cited Dr. Tran's assessment's "supportability with medical signs and laboratory findings, consistency with the record, and [her] areas of specialization." (AR 53.)

The ALJ's effective rejection of the treating and examining doctors' opinions did not satisfy the Ninth Circuit's requirement that the ALJ provide specific and legitimate reasons before discounting

---

[5] Under workers' compensation guidelines, a preclusion from heavy lifting contemplates a loss of approximately half of a worker's preinjury capacity for lifting. Macri v. Chater, 93 F.3d 540, 543-44 (9th Cir. 1996).

such evidence.  Nothing in the ALJ's evaluation specified any defects in the treating and examining doctors' opinions so as to justify rejecting them.  See Smolen, 80 F.3d at 1286 (ALJ's effective rejection of medical opinions without explicit findings was legal error).  Moreover, the generalized reasons the ALJ did provide to resolve the evidentiary conflict in favor of Dr. Tran – supportability with medical signs and findings, consistency with the record, and areas of specialization – applied even more to the treating and examining physicians' opinions.  Plaintiff's treating physicians conducted tests on Plaintiff, generally agreed with each other, and were orthopedic specialists, unlike Dr. Tran, who specialized in internal medicine.  In fact, these factors indicate that the treating doctors' opinions were entitled to extra weight.  See Orn, 495 F.3d at 633 (finding treating physicians' opinions entitled to additional weight based on supportability and consistency with the record on the whole); 20 C.F.R. § 404.1527(d)(3)-(5).

The Commissioner contends that for various reasons the ALJ did not err in rejecting the opinions of Plaintiff's physicians (J. Stip. 13-15), but the ALJ did not articulate any of those reasons.  They therefore cannot support the ALJ's evaluation.  See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (error for district court to affirm ALJ's credibility decision "based on evidence [ALJ] did not discuss" and "specific facts or reasons" ALJ did not assert).

The Commissioner alternatively contends that any error by the ALJ in this context was harmless because all of the physicians' opinions were consistent with the ALJ's ultimate determination that Plaintiff can perform light work.  (J. Stip. 15.)  This contention is incorrect. For example, Dr. Montgomery's functional assessment – which posited

restrictions on repetitive or forceful gripping, twisting, pushing, pulling, and manipulating with the hands – was squarely inconsistent with the ALJ's determination that Plaintiff can perform the jobs of "marker" or "grader/sorter," which require frequent or constant handling. See DICOT 209.587-034, 1991 WL 671802 (Marker),[6] 529.687-186, 1991 WL 674781 (Sorter).

Accordingly, the ALJ failed to provide specific and legitimate reasons to reject the treating and examining physicians' opinions, and the error was not harmless.

B. <u>Assessment of residual functional capacity and hypothetical question, development of the record, and adverse credibility determinations</u>

Plaintiff further contends that the ALJ omitted limitations from her RFC and the hypothetical question to the vocational expert, failed to develop the record, and improperly rejected testimony by Plaintiff and her mother. (J. Stip. 17-24, 29-31, 33-38.) In light of the recommended resolution of the first issue, however, it is unnecessary to resolve these remaining arguments. See Negrette v. Astrue, No. EDCV 08-0737 RNB, 2009 WL 2208088, at *2 (C.D. Cal. July 21, 2009) (finding it unnecessary to address further disputed issues when court found that ALJ failed to properly consider treating doctor's opinion and laywitness testimony). On remand, the ALJ will necessarily reevaluate Plaintiff's RFC after reconsidering the treating doctors'

---

[6] The description of "marker" in the Dictionary of Occupational Titles indicates that the handling of "body members, hand tools, and/or special devices to work, move, or carry objects or materials" necessary to do the job is "not significant." See DICOT App. B, 1991 WL 688701 (4th ed. 1991) (indicating that "7" in sixth spot of identifying number for the job refers to handling of certain types of "things"). The overall job description, however, indicates that "handling" is "frequently" involved.

opinions and will base any credibility determinations on the testimony at a new hearing.

**VI. CONCLUSION**

When error exists in an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." INS v. Ventura, 537 U.S. 12, 16, 123 S. Ct. 353, 355, 154 L. Ed. 2d 272 (2002) (citations and quotation marks omitted); Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004). Remand for further proceedings is appropriate "if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); see Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000) (explaining that "decision whether to remand for further proceedings turns upon the likely utility of such proceedings"). Remand for the payment of benefits is appropriate when no useful purpose would be served by further administrative proceedings and the record has been fully developed, Lester, 81 F.3d at 834, or when remand would unnecessarily delay the receipt of benefits, Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985).

Courts may "credit as true" the opinions of treating or examining physicians when "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Harman, 211 F.3d at 1178 (citations and quotation marks omitted); see Benecke, 379 F.3d at 594; Connett, 340 F.3d at 876 (recognizing that courts "have some flexibility in applying the 'credit as true'" rule).

Because the ALJ did not properly weigh and address the treating

and examining physicians' opinions, outstanding issues must be resolved before a determination of disability can be made. <u>Harman</u>, 211 F.3d at 1178.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that (1) the decision of the Commissioner is REVERSED; (2) Plaintiff's request for remand is GRANTED; and (3) this action is REMANDED for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: <u>December 21, 2011</u>     _____
                                     JEAN P. ROSENBLUTH
                                     U.S. Magistrate Judge